IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **JOSHUA BATCHELOR,** | Case No. 1:22-CV-01049-PAB |
| **Plaintiff,** | |
| -vs- | **JUDGE PAMELA A. BARKER** |
| **THE BRILLIANCE SCHOOL,** | |
| **Defendant.** | **MEMORANDUM OPINION AND ORDER** |

This case is before the Court on Defendant The Brilliance School's ("Defendant") Motion for Summary Judgment filed on August 2, 2023. (Doc. No. 20.) On September 18, 2023, Plaintiff Joshua Bachelor ("Plaintiff") filed a Memorandum in Opposition. (Doc. No. 23.) On October 2, 2023, Defendant filed a Reply. (Doc. No. 24.)

For the following reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment. (Doc. No. 20.)

I.  Background

Defendant is a public charter school in Garfield Heights, Ohio. (Emerson Dep. # 1 (Doc. No. 20-1) at Tr. 15:4–7.) In 2020, Defendant employed "approximately" ten or eleven teachers, with "one or two support staff." (*Id.* at Tr. 17:13–14.) Mr. Marshall Emerson is the co-founder of Defendant and managing partner of AIC Education Partners ("AIC"), a company that manages Defendant. (*Id.* at Tr. 14:4–5, 16:7–9.) In May 2020, Mr. Emerson hired Plaintiff as an Executive Director and Head of School. (*Id.* at Tr. 34:3–7, 35:22–36:6.) Mr. Kenan Bishop is one of AIC's managing directors, a co-founder of Defendant, and Plaintiff's former direct supervisor. (Bishop

Dep. (Doc. No. 20-3) at Tr. 11:5–7; Emerson Dep. # 1 at Tr. 42:19–21; Emerson Dep. # 2 (Doc. No. 20-2) at Tr. 17:25–18:2.)

Plaintiff is a homosexual male. (Plaintiff's Decl. (Doc. No. 23 at pp. 10–12) at ¶¶ 4.)[1] Mr. Bishop and Mr. Emerson are heterosexual males. (Bishop Dep. at Tr. 37:25–38:2; Emerson Dep. # 2 at Tr. 32:1–2.) Mr. Emerson knew when he hired Plaintiff that Plaintiff was gay. (Emerson Dep. # 2 at Tr. 31:7.) Plaintiff declares that Mr. Bishop also knew. (Plaintiff's Decl. at ¶ 7.) Mr. Bishop, however, testified that he was not aware that Plaintiff was gay. (Bishop Dep. at Tr. 36:22–25.)

According to Plaintiff, at some point during his employment, Plaintiff and Mr. Bishop participated in a call with a vendor "wherein the use of identifying pronouns" was discussed. (Plaintiff's Decl. at ¶¶ 11–12.) During this call, Mr. Bishop "did not want to discuss the use of identifying pronouns" and said that "God made only 'Adam and Eve'" (the "Adam and Eve" comment). (Plaintiff's Decl. at ¶¶ 11–12.) Mr. Bishop did not recall making this comment. (Bishop Dep. at Tr. 42:20.) Throughout Plaintiff's employment, Mr. Bishop tasked Plaintiff with working on weekends, imposed deadlines on Plaintiff, and commented on Plaintiff's work. (Emerson Dep. # 2 at Tr. 21:14–17.; Bishop Dep. at Tr. 25:10–16.) Plaintiff declares that Mr. Bishop did not task Defendant's heterosexual principals with weekend work or impose work deadlines on them, and Mr. Bishop told tell them "that he hoped they enjoyed their weekend time off with their families." (*Id.* at ¶¶ 17–18, 20.) Yet, according to Plaintiff, Mr. Bishop never told "[him] to enjoy [his] weekend time off with [his] family." (Plaintiff's Decl. at ¶¶ 21–22.) Additionally, Plaintiff declares that when

---

[1] Defendant did not depose Plaintiff. However, Plaintiff attached to his Memorandum in Opposition a declaration executed under 28 U.S.C. § 1746. (Doc. No. 23 at pp. 10–12.)

2

Plaintiff was sick and taking time off from work due to COVID-19, Mr. Bishop continued to delegate work to him. (*Id.* at ¶ 26.)

According to Plaintiff, Plaintiff told Mr. Emerson that Mr. Bishop treated him differently from heterosexual employees. (*Id.* at ¶ 23.) Plaintiff declares that Mr. Emerson did not investigate Plaintiff's complaint. (*Id.* at ¶ 33.) Plaintiff also declares that Mr. Bishop continued to reduce heterosexual employees' weekend workloads and "ma[de] comments about [them] spending time together as families." (*Id.* at ¶ 24.) In September of 2020,[2] Plaintiff resigned from his employment with Defendant. (Bishop Dep. at Tr. 37:14–16; Emerson Dep. # 1 at Tr. 43:11–15, 43:21–44:5.)

After Plaintiff resigned, he filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), under Charge Number 532-2021-00637. (Doc. No. 1-2 at p. 1.) On March 21, 2022, the EEOC determined that it would not proceed further with the investigation into Plaintiff's claims. (*Id.*) The EEOC made "no determination about whether further investigation" would establish a Title VII violation. (*Id.*) The EEOC also noted that its decision did "not mean [Plaintiff's] claims have no merit." (*Id.*)

On June 16, 2022, Plaintiff filed a Complaint in this Court, alleging claims against Defendant for sexual orientation discrimination (Count I) and retaliation (Count II) in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). (Doc. No. 1.) On August 2, 2023, Defendant filed the instant Motion for Summary Judgment. (Doc. No. 20.) On September 18, 2023, Plaintiff filed a

---

[2] In his Complaint, Plaintiff alleges that he resigned in September 2020. (Doc. No. 1 at ¶ 66.) Neither party submitted evidence of this date. However, during the depositions of Mr. Bishop and Mr. Emerson, Plaintiff's counsel prefaced several questions with "September of 2020" as the date when Plaintiff's employment ended. (*See* Bishop Dep. at Tr. 37:9–13; Emerson Dep. # 1 at Tr. 43:4–10.) Neither Mr. Bishop nor Mr. Emerson disputed the September 2020 date in their responses. (*See* Bishop Dep. at Tr. 37:14–16; Emerson Dep. # 1 at Tr. 43:11–15, 43:21–44:5.) It therefore appears to the Court that it is undisputed that Plaintiff resigned in September 2020.

3

Memorandum in Opposition. (Doc. No. 23.) On October 2, 2023, Defendant filed a Reply. (Doc. No. 24.) Accordingly, Defendant's Motion for Summary Judgment is ripe for a decision.

## II. Standard of Review

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is 'genuine' only if based on evidence upon which a reasonable jury could return a verdict in favor of the non-moving party." *Henderson v. Walled Lake Consol. Sch.*, 469 F.3d 479, 487 (6th Cir. 2006) (citing *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004)). "Thus, 'the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.'" *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). A fact is "material" only "if its resolution might affect the outcome of the suit under the governing substantive law." *Henderson*, 469 F.3d at 487 (citing *Hedrick*, 355 F.3d at 451).

At the summary judgment stage, "[a] court should view the facts and draw all reasonable inferences in favor of the non-moving party." *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 628 (6th Cir. 2018) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "[T]he moving party bears the initial burden of showing that there is no genuine dispute of material fact." *Ask Chems., LP v. Comput. Packages, Inc.*, 593 F. App'x 506, 508 (6th Cir. 2014) (citing *Anderson*, 477 U.S. at 256). The moving party may satisfy this initial burden by "identifying those parts of the record which demonstrate the absence of any genuine issue of material fact." *Lindsey v. Whirlpool Corp.*, 295 F. App'x 758, 764 (6th Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, (1986)). "[I]f the moving party seeks summary judgment on an issue for which it

does not bear the burden of proof at trial," the moving party may also "meet its initial burden by showing that 'there is an absence of evidence to support the nonmoving party's case.'" *Id.* (quoting *Celotex*, 477 U.S. at 325).

Once the moving party satisfies its burden, "the burden shifts to the non-moving party who must then point to evidence that demonstrates that there is a genuine dispute of material fact for trial." *Ask Chems.*, 593 F. App'x at 508–09 (citing *Anderson*, 477 U.S. at 256). "[T]he nonmoving party may not simply rely on its pleading, but must 'produce evidence that results in a conflict of material fact to be solved by a jury.'" *MISC Berhad v. Advanced Polymer Coatings, Inc.*, 101 F. Supp. 3d 731, 736 (N.D. Ohio 2015) (quoting *Cox*, 53 F.3d at 150).

### III. Analysis

Defendant moves for summary judgment on both Plaintiff's sexual orientation discrimination claim and his retaliation claim. The Court will consider each, in turn, below.

#### A. Sexual Orientation Discrimination (Count I)

Under Title VII, it is unlawful "for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). The protected "sex" characteristic extends to one's sexual orientation." *Bostock v. Clayton County*, 590 U.S. -- , 140 S. Ct. 1731, 1737 (2020) (noting that "[s]ex plays a necessary and undisguisable role" in an employer's decision to "fire[] an individual for being homosexual").

A plaintiff may rely on either direct or circumstantial evidence to establish that an employer engaged in discrimination. *Johnson v. Kroger Co.*, 319 F.3d 858, 864–65 (6th Cir. 2003). Plaintiff does not rely on any direct evidence to support his claims. (Doc. No. 23 at p. 3.) Therefore, the Court

applies the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Under this framework, Plaintiff must present sufficient evidence to establish a prima facie discrimination case. *Miles v. S. Cent. Human Res. Agency, Inc.*, 946 F.3d 883, 887 (6th Cir. 2020).

To establish a prima facie case of sexual orientation discrimination, Plaintiff must show "(1) that he is a member of a protected class, (2) that he was subject to an adverse employment decision, (3) that he was qualified for the position," and (4) that "he was replaced by a person outside the protected class or was treated less favorably than a similarly situated individual outside of his protected class." *Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 762 (6th Cir. 2006); *Laster v. City of Kalamazoo*, 746 F.3d 714, 727 (6th Cir. 2014).

"The establishment of a prima facie case creates a rebuttable presumption of discrimination and requires the defendant to 'articulate some legitimate, nondiscriminatory reason' for taking the challenged action." *Kroger*, 319 F.3d at 866 (quoting *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 573 (6th Cir. 2000)). Finally, "[i]f the defendant is able to satisfy this burden, [Plaintiff] must then 'prove that the proffered reason was actually a pretext to hide unlawful discrimination.'" *Id.* If Plaintiff fails to establish a prima facie case, the Court need not address the legitimate reason and pretext parts of the analysis. *Asmo v. Keane, Inc.*, 471 F.3d 588, 601 (6th Cir. 2006) (citation omitted).

In its Motion, Defendant argues that Plaintiff has not made a prima facie showing of discrimination because there was no discrimination. (Doc. No. 20 at p. 6.) Defendant asserts that Mr. Bishop denies making the "Adam and Eve" comment. (*Id.* at p. 5.) Defendant contends that Mr. Emerson testified that he did not recall Plaintiff complaining to him about Mr. Bishop making the "Adam and Eve" comment. (*Id.* at p. 6.) Defendant also insists that Mr. Bishop "especially refutes"

being "overly critical of Plaintiff's work product" or that "he imposed overly burdensome [work] deadlines on Plaintiff." (*Id.*) Thus, Defendant argues, Plaintiff does not provide sufficient evidence to show either that Defendant treated similarly situated employees differently or that it made Plaintiff's work conditions so intolerable that Plaintiff felt compelled to resign, and that therefore Plaintiff cannot establish a prima facie case of discrimination. (*Id.*)

Plaintiff responds that Defendant did treat him differently. (Doc. No. 23 at pp. 4–5.) As examples, Plaintiff cites instances in which Defendant, through Mr. Bishop, purportedly would assign Plaintiff weekend tasks "that were other employees' duties and could have easily been completed on weekdays by those employees." (*Id.* at p. 5.) According to Plaintiff, Mr. Bishop would also criticize Plaintiff when he requested a Saturday off but would "quickly forgive[]" a principal named Ivy Dodd when Ms. Dodd did the same. (*Id.*) Whenever Plaintiff informed Defendant that he could not work a given weekend, "[Mr.] Emerson and Mr. Bishop [had] a meeting to discuss [Plaintiff's] performance." (*Id.*)

Defendant replies that Ms. Dodd, being a principal, was not similarly situated with Plaintiff, who was "Executive Director" and held "different job duties." (Doc. No. 24 at pp. 5–6.) Defendant concedes that Mr. Emerson "acknowledge[d] receiving minor concerns from [] Mr. Bishop regarding Plaintiff's availability" to work weekends but maintains that "no serious issue was ever taken" if Plaintiff was unavailable for a weekend. (*Id.* at p. 6.)

Here, Defendant does not contest that Plaintiff is a member of a protected class or was qualified to be Executive Director. (Doc. No. 20 at p. 6; Doc. No. 24 at p. 4.) Defendant only

challenges whether Plaintiff was subjected to an adverse employment decision[3] and whether "similarly situated employees . . . were treated differently." (Doc. No. 20 at p. 6.)

For the following reasons, the Court concludes that Plaintiff has failed to establish a prima facie case of sexual orientation discrimination because, construing the evidence in a light most favorable to him, Plaintiff does not demonstrate that he suffered an adverse employment decision, i.e., constructive discharge.

The second element of a prima facie discrimination claim is that Plaintiff was subjected to an adverse employment decision. *Laster*, 746 F.3d at 727. Plaintiff asserts that he was constructively discharged from his position as Executive Director. (Doc. No. 23 at 2.) "A constructive discharge is an adverse employment action for purposes of Title VII." *Funk v. City of Lansing*, 821 F. App'x 574, 580 (6th Cir. 2020). Under Title VII, "an employee can prevail on a claim of constructive discharge only if the employer engaged in conduct that forced the employee to quit" or involuntarily resign. *Phillips v. Am. Red Cross Blood Servs.*, 2023 WL 6290648, at *7 (N.D. Ohio Sept. 27, 2023) (quotation marks omitted) (citing *Watson v. City of Cleveland*, 202 F. App'x 844, 856 (6th Cir. 2006)). According to the Supreme Court of the United States,

> The constructive-discharge doctrine contemplates a situation in which an employer discriminates against an employee to the point such that his "working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign." *Penn. State Police v. Suders*, 542 U.S. 129, 141, 124 S.Ct. 2342, 159 L.Ed.2d 204 (2004). When the employee resigns in the face of such circumstances, Title VII treats that resignation as tantamount to an actual discharge. *Id.*, at 142–143, 124 S.Ct. 2342.
>
> A claim of constructive discharge therefore has two basic elements. A plaintiff must prove first that he was discriminated against by his employer to the point where a

---

[3] Plaintiff contends that in its Motion Defendant does not dispute that Plaintiff "suffered an adverse action (i.e., constructive termination)." (Doc. No. 23 at p. 4.) Defendant clarifies in its Reply that it does indeed contest that "Plaintiff was subject to an adverse employment decision." (Doc. No. 24 at p. 4.)

>reasonable person in his position would have felt compelled to resign. *Id.*, at 148, 124 S.Ct. 2342. But he must also show that he actually resigned. *Ibid.* ("A constructive discharge involves both an employee's decision to leave and precipitating conduct . . . " (emphasis added)).

*Green v. Brennan*, 578 U.S. 547, 555 (2016). It is undisputed that Plaintiff resigned from his position with Defendant. (Doc. No. 20 at p. 9; Doc. No. 23 at p. 7.) Therefore, the only constructive discharge element in dispute is whether a reasonable person in Plaintiff's position would have felt compelled to resign. *Green*, 578 U.S. at 555.

The Sixth Circuit considers several factors in deciding whether a reasonable employee would have felt compelled to resign:

>Whether a reasonable person would have felt compelled to resign depends on the facts of each case, but we consider the following factors relevant, singly or in combination: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status.

*Logan v. Denny's, Inc.*, 259 F.3d 558, 569 (6th Cir. 2001) (quotation omitted). These factors must meet a high bar—they must demonstrate that Plaintiff's working conditions were "hellish, or at least close to it." *Gorbe v. City of Lathrup Vill.*, 2022 U.S. App. LEXIS 11685, at *13–14 (6th Cir. Apr. 28, 2022) (quoting *Tchankpa v. Ascena Retail Grp., Inc. (Tchankpa II)*, 951 F.3d 805, 815 (6th Cir. 2020)).

In this case, Plaintiff claims he was constructively discharged because Defendant required Plaintiff to work on weekends, including when he was sick, criticized his performance, imposed arbitrary deadlines, and made a single offensive remark (the "Adam and Eve" comment). (Doc. No. 1 at ¶¶ 26, 33–43; Doc No. 23 at pp. 4–6.) Therefore, only two of the *Logan* factors are relevant here: reassignment to menial or degrading work and badgering, harassment, or humiliation. Upon its

9

review of the evidence in a light most favorable to Plaintiff, to include Plaintiff's testimony set forth in his Declaration concerning how he was discriminated against by Defendant, the Court finds that such discrimination was not sufficient to establish that a reasonable person in his position would have felt compelled to resign.

First, there is no evidence that Defendant "reassigned" Plaintiff to menial or degrading work. Plaintiff worked some weekends, but that was part of his job as Executive Director.  (Emerson Dep. # 1 at Tr. 45:23–24 (testifying that "pieces of [Plaintiff's] job description [] imply there may be weekend work"); Emerson Dep. # 2 at Tr. 25:2–10.)  And Defendant required Plaintiff to work on weekends throughout his employment.  (Doc. No. 23 at 13 (text messages between Plaintiff and Mr. Bishop).)  In other words, Defendant did not "reassign" Plaintiff to any tasks.  And even if Defendant did reassign Plaintiff, the Court finds that no reasonable jury could find it menial or degrading for Defendant to require Plaintiff to perform "non-essential" assignments on the weekend.  (Doc. No. 1 at ¶ 31; Plaintiff's Decl. at ¶ 15.)

Additionally, that these tasks "were other employees' duties" and "could have easily been completed on weekdays by those employees" does not mean that the tasks were menial or degrading. (Doc. No. 23 at p. 5; Plaintiff's Decl. at ¶¶ 15, 26.)  As noted above, Plaintiff's Executive Director position contemplated weekend work on certain projects.  (Emerson Dep. # 1 at Tr. 45:23–24; Emerson Dep. # 2 at Tr. 25:2–10.)  Further, it was not menial or degrading for Plaintiff to receive work assignments while he was ill.  No reasonable jury could find that Plaintiff's work schedule was so menial or degrading that it was objectively intolerable, even if it may have been "difficult or unpleasant sometimes."  *See Golden v. UAW-Chrysler Nat'l Training Ctr.*, 2019 WL 6037598, at *4

(E.D. Mich. Nov. 14, 2019). This factor does not support the conclusion that a reasonable person in Plaintiff's position would have felt compelled to resign.

Second, there is insufficient evidence that Defendant badgered, harassed, or humiliated Plaintiff. Plaintiff contends that Mr. Bishop "baselessly criticized" Plaintiff's performance and "imposed arbitrary deadlines." (Doc. No. 1 at ¶¶ 26–27.) These contentions are vague, and there is no evidence that any criticisms or deadlines were arbitrary. Mr. Bishop testified that he only ever complained about Plaintiff's availability for weekend work, and never about his job performance. (Emerson Dep. # 1 at Tr. 44:9–15.) Mr. Emerson also testified that he "praised" Plaintiff for his job performance and thought he was "qualified" to be Executive Director. (*Id.* at Tr. 40:1–41:9.) Plaintiff's Declaration does not indicate that he was ever criticized, and Plaintiff cites no other support for his allegation that he was criticized, let alone baselessly. (*See generally* Plaintiff's Decl.)

Even if Defendant "baselessly" criticized Plaintiff's performance, "the manner in which a plaintiff is supervised or criticized is normally insufficient." *See McDaniel v. Ohio Dep't of Rehab. & Corr.*, 2015 WL 7888759, at *7 (S.D. Ohio Dec. 4, 2015); *Tchankpa II*, 951 F.3d at 815 (finding plaintiff not constructively discharged despite employer "giving him unwarranted negative feedback"). Although challenging work conditions have sometimes been found to constitute constructive discharge, the generalized assertions of a heavy workload with "arbitrary deadlines" and criticism do not rise to the high "hellish" level found sufficient elsewhere. *See Jackson v. General Motors*, 2023 U.S. Dist. LEXIS 191179, at *2–3 (W.D. Tenn. Oct. 24, 2023) (finding constructive discharge where plaintiff was required to perform the work of "three full-time employees and denied interviews for jobs at other GM plants for which she was qualified"). Therefore, Plaintiff's assertions about Defendant's criticism of his job performance on their own are too vague and generalized to

11

demonstrate any discrimination. *Stewart v. Esper*, 815 F. App'x 8, 18 (6th Cir. 2020) (finding allegations insufficient where plaintiff's failure to "point to any specific acts" meant claims were "too generalized and vague"); *E.E.O.C. v. Spitzer Mgmt.*, 866 F. Supp. 2d 851, 857–58 (N.D. Ohio 2012) (granting summary judgment on Title VII hostile work environment claim where plaintiff "could only recall in vague terms the specific words utilized" by management).

Plaintiff also argues that Mr. Bishop's "Adam and Eve" comment contributed to his constructive discharge. (Doc. No. 23 at pp. 5–6.) Although Defendant disputes whether this comment was ever made (Bishop Dep. at Tr. 42:20), Plaintiff presents evidence that Mr. Bishop made the comment, and that it offended Plaintiff. (Plaintiff's Decl. at ¶¶ 12–13.) Drawing all inferences in Plaintiff's favor, the "Adam and Eve" comment alone is insufficient to show that Plaintiff's work conditions were so intolerable that he would have felt compelled to resign. "Mere offensive utterances are not actionable under Title VII." *Goldfaden v. Wyeth Labs., Inc.*, 2010 WL 2011310, at *13 (E.D. Mich. May 19, 2010) (citing *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993)). Courts in the Sixth Circuit have observed that "[o]ne or two comments . . . do not result in a work environment that is so intolerable that it would force any reasonable employee to resign." *See, e.g.*, *Kaminski v. Hillman Grp., Inc.*, 2021 WL 680110, at *3 (S.D. Ohio Feb. 22, 2021).

Even where multiple utterances occur, the Sixth Circuit has rejected constructive discharge claims at summary judgment where the plaintiff's "evidence of harassment and disparaging comments were isolated to only a few incidents and by a few individuals and were not pervasive enough to significantly alter [the plaintiff's] working conditions." *Cleveland v. S. Disposal Waste Connections*, 491 F. App'x 698, 708 (6th Cir. 2012). Thus, where a plaintiff experiences only "ordinary" discrimination, there can be no constructive discharge. *Goldfaden*, 2010 WL 2011310, at

*10 (citing *Perry v. Harris Chernin, Inc.*, 126 F.3d 1010, 1015 (7th Cir. 1997)). Plaintiff may have indeed subjectively felt forced to resign, but this alone is not enough. *Kirk v. Hockenberry*, 2016 WL 374433, at *7 (S.D. Ohio Feb. 1, 2016); *Wilson v. Firestone Tire & Rubber Co.*, 932 F.2d 510, 515 (6th Cir. 1991) (noting that courts must objectively evaluate comments without considering "undue sensitivities"); *Festerman v. County of Wayne*, 611 F. App'x 310, 320 (6th Cir. 2015) ("[H]urt feelings . . . alone are insufficient to establish the existence of intolerable working conditions."); *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (explaining that "simple teasing, offhand comments, and isolated incidents . . . will not amount to discriminatory changes in the terms and conditions of employment") (quotation marks and citation omitted). The Court concludes that Mr. Bishop's isolated "Adam and Eve" comment, even though offensive or hurtful to Plaintiff, objectively fails to rise to the "hellish" level of harassment that would compel a reasonable person to resign. *See Kirk*, 2016 WL 374433, at *7 (comment that "there was no place in the School District for a person with Plaintiff's religious beliefs" insufficient); *Tchankpa v. Ascena Retail Grp., Inc.*, 2018 WL 3747813, at *9 (S.D. Ohio Aug. 7, 2018) (comments that plaintiff be "thrown out of the building" and "would be fired if he took time off" to work from home due to a disability insufficient); *Hall v. Hebrank*, 102 F. Supp. 2d 844, 865 (S.D. Ohio 1999) (a "single comment" about it being "damaging" to "be seen" with the plaintiff not enough).

Assuming *arguendo* that the "Adam and Eve" comment was beyond "ordinary discrimination," it would still not be enough to substantiate a constructive discharge. An objectively harassing comment standing alone is insufficient—the comment must still have been "calculated to encourage" Plaintiff's resignation. *Logan*, 259 F.3d at 659.

13

To show that Defendant acted with the intent of encouraging Plaintiff's resignation, Plaintiff cites Mr. Bishop's alleged membership status as an Elder in an unnamed Christian ministry. (Plaintiff's Decl. at ¶¶ 8–9.)  According to Plaintiff, the group to which Mr. Bishop belongs preaches "homophobic" beliefs.  (*Id.* at ¶ 9 (citing several Bible verses).)  Mr. Bishop's outside membership in what Plaintiff maintains is a discriminatory organization does not mean that Mr. Bishop's treatment of Plaintiff in the workplace was discriminatory.  Indeed, as noted above, Plaintiff does not point to any evidence that any "baseless" criticisms were anything outside of the "normal course of supervising an employee."  *Speck v. City of Memphis*, 594 F. Supp. 2d 905, 920 (W.D. Tenn. 2009). Thus, even if Plaintiff's belief was correct, Mr. Bishop's membership in his group has no relation to whether Mr. Bishop actually treated Plaintiff differently during his employment with Defendant. Plaintiff cites to no evidence that would allow a jury to conclude that Mr. Bishop's actions were an extension of his personal allegedly discriminatory beliefs.  *Speck*, 594 F. Supp. 2d at 920 (finding no constructive discharge where the plaintiff "adduced no evidence that any act was taken deliberately for some improper purpose, let alone to discriminate against [the p]laintiff").

Lastly, even if Plaintiff had sufficiently shown that the "Adam and Eve" comment and weekend work constituted sufficient "harassment . . . by the employer calculated to encourage the employee's resignation," the "occurrence of one [constructive discharge] factor[] in isolation . . . generally is insufficient to support a finding of 'intolerable working conditions.'"  *See Gosbin v. Jefferson Cnty. Comm'rs*, 2017 WL 5653503, at *10 (S.D. Ohio Mar. 29, 2017) (citation omitted).

The Court concludes that because when construed in a light most favor to Plaintiff, the evidence does not demonstrate that he suffered such intolerable working conditions that a reasonable person in his position would have felt compelled to resign.  Therefore, Plaintiff has not shown that

14

he was subjected to a constructive discharge and consequently he has not demonstrated that he suffered an adverse employment decision. Because Plaintiff has not met his burden of establishing that he suffered an adverse employment decision, i.e., that he was constructively discharged, the Court need not evaluate whether Plaintiff has established the remaining elements of a claim for sexual orientation discrimination. Accordingly, Plaintiff has failed to establish a prima facie case of discrimination under Title VII and Defendant's Motion for Summary Judgment is **GRANTED** as to Plaintiff's claim for sexual orientation discrimination under Title VII (Count I).

### B. Retaliation (Count II)

Title VII provides that it is unlawful for an employer "to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

Plaintiff only offers circumstantial evidence in support of his retaliation claim. Therefore, the Court again applies the *McDonnell Douglas* burden-shifting framework. Application of *McDonnell Douglas* for retaliation differs only in the analysis of the elements required to establish a prima facie case. *See Bruce v. Wormuth*, 2021 WL 4272853, at *4, 4 n.6 (M.D. Tenn. Sept. 21, 2021).

To establish a prima facie case of retaliation under Title VII, Plaintiff must present sufficient evidence to establish that "(1) he engaged in activity protected by Title VII; (2) his exercise of such protected activity was known by [Defendant]; (3) thereafter, [Defendant] took an action that was 'materially adverse' to [Plaintiff]; and (4) a causal connection existed between the protected activity and the materially adverse action." *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014) (citation omitted).

15

In Count II, Plaintiff alleges that he was retaliated against for complaining about Mr. Bishop's discrimination when Defendant, through Mr. Emerson, required Plaintiff "to continue working with Mr. Bishop after [Plaintiff's] complaints of . . . discrimination," resulting in his constructive discharge. (Doc. No. 1 at ¶¶ 68, 70, 73, 90.)

Defendant argues that Plaintiff has failed to prove a prima facie case of retaliation because he has not shown evidence that he complained to Mr. Emerson about Mr. Bishop's alleged conduct. (Doc. No. 20 at p. 9.) Defendant repeats that it did not "constructively terminate" Plaintiff. (*Id.*) In particular, Plaintiff never expressed to Mr. Emerson that his resignation, apparently made with "no reason" given, was due to "alleged harassment as a result of his sexual orientation." (*Id.*) Defendant insists that Plaintiff did not have any disciplinary actions taken against him, "was not at risk for losing his employment[,] and his job performance was satisfactory." (*Id.*) Defendant contends that Plaintiff was "praised frequently" for his performance and was "believed to be well qualified" to be Executive Director. (*Id.* at p. 10.)

In response, Plaintiff argues that he did complain to Mr. Emerson about Mr. Bishop's disparate treatment and that Mr. Emerson's failure to recall Plaintiff's complaint is "convenient." (Doc. No. 23 at p. 5.) In one instance, Plaintiff contends, Mr. Bishop treated Mr. Harriston differently and with compassion when Mr. Harriston's wife was ill, remarking that Mr. Bishop "texted him sweetly." (*Id.* at p. 6.) When Plaintiff himself became sick with COVID-19, however, Mr. Bishop allegedly continued assigning Plaintiff work and "disregarded his medical condition." (*Id.*) Plaintiff asserts that this disparate treatment, in temporal proximity to Plaintiff's resignation, is sufficient to allow a reasonable jury to find that he was constructively terminated as an act of retaliation. (*Id.*)

16

Defendant replies that Plaintiff has failed to show he complained to Mr. Emerson, which indicates that there is no "temporal proximity" between any complaint and Plaintiff's alleged "constructive termination." (Doc. No. 24 at p. 8.)

Here, Defendant disputes that (1) Plaintiff complained to Mr. Emerson (i.e., whether there was a protected activity known to Defendant); (2) Defendant "constructively terminated" Plaintiff as a result (i.e., whether Defendant took a materially adverse action); and (3) any alleged termination was causally connected to Plaintiff's alleged complaints to Mr. Emerson. (Doc. No. 20 at pp. 8–9, 10.)

For the following reasons, the Court concludes that Plaintiff has failed to establish a prima facie case of retaliation.

### 1. Known Protected Activity

Beginning with the first element, a "protected activity" under Title VII includes "complaining to anyone (management, unions, other employees, or newspapers) about allegedly unlawful practices." *Jackson v. Genesee Cnty. Rd. Comm'n*, 999 F.3d 333, 344–45 (6th Cir. 2021) (citation omitted). To receive protection under Title VII's anti-retaliation provision, a plaintiff must oppose acts that he believes are Title VII violations. *Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 469 (6th Cir. 2012).

The Court concludes that there is a genuine dispute of fact as to whether Plaintiff engaged in protected activity. Defendant argues that "there is no evidence whatsoever of any informal or formal complaint" to Mr. Emerson. (Doc. No. 24 at p. 8.) But the record says otherwise. In Mr. Emerson's deposition, when asked if Plaintiff had ever complained to him about Mr. Bishop, Mr. Emerson recalled that he and Plaintiff "discussed [their] expectations about [Plaintiff] working and [Plaintiff]

17

trying to balance work and family in work life." (Emerson Dep. # 2 at Tr. 34:23–35:8.) Specifically, Mr. Emerson and Plaintiff discussed "weekend or evening work" being "part of the role of the executive director." (*Id.* at p. 35:3–5.) Plaintiff declares that he "complained to Mr. Emerson that Mr. Bishop treated me differently than heterosexual employees" by requiring Plaintiff to perform the heterosexual employees' work on weekends and not requiring them to work weekends. (Plaintiff's Decl. at ¶ 23.) Contrary to Defendant's assertion, Plaintiff's Declaration suffices as a source of evidence on summary judgment. (Doc. No. 24 at p. 8); Fed. R. Civ. P. 56(c) (contemplating use of declaration "to support or oppose a motion" for summary judgment). Therefore, a reasonable jury could find that Plaintiff engaged in a Title VII protected activity.

As to whether Plaintiff's presumed Title VII protected activity was known, the Court finds that there is a genuine dispute of material fact on this element as well. Mr. Emerson in his deposition acknowledged that Plaintiff discussed issues about his schedule, as set by Mr. Bishop, with him. (Emerson Dep. # 2 at Tr. 35:2–8.) It is therefore undisputed that Mr. Emerson was aware of Plaintiff's concerns with Mr. Bishop's scheduling to some degree. If Plaintiff's complaint was a "protected activity," Mr. Emerson would have been aware of it. *Johnson v. Gwen Mooney Funeral Home, Inc.*, 2010 WL 3001928, at *14 (S.D. Ohio July 29, 2010) (finding sufficient for retaliation claim evidence of supervisor's knowledge of complaints). Plaintiff has met his burden on this element.

### 2. Materially Adverse Action

Having determined that Plaintiff has met his burden and created a genuine issue of material fact as to whether Plaintiff engaged in a protected activity and Mr. Emerson therefore knew about it, the Court must now analyze whether Defendant thereafter subjected Plaintiff to a materially adverse action. Although an "adverse employment decision" is similar to a "materially adverse action," see

*Coleman v. City of Toledo*, 2023 WL 5748713, at *4 (N.D. Ohio Sept. 6, 2023), Plaintiff's burden of establishing "a materially adverse action is less onerous than that of establishing an adverse employment action in [his] discrimination claim." *Lively v. Kroger Co.*, 2020 WL 9258709, at *9 (E.D. Mich. Nov. 20, 2020) (citing *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 597 (6th Cir. 2007)). A "materially adverse action" is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

Plaintiff's primary claimed adverse action is his constructive discharge, which the Court has found to be unsupported by the record. To the extent Plaintiff also asserts that Mr. Bishop retaliated by refusing to be amiable with him, this conduct is not actionable under Title VII. *See Crawford v. Carroll*, 529 F.3d 961, 973 n.13 (11th Cir. 2008) (suggesting that "most petty and trivial actions" are not materially adverse).

Plaintiff alternatively contends that Mr. Emerson failed to intervene or investigate his complaint. (Doc. No. 23 at 7; Plaintiff's Decl. at ¶¶ 32–33.) In the Sixth Circuit, a failure to investigate a complaint "can constitute an act of retaliation under some circumstances—for example, if the failure is in retaliation for some separate, protected act by the plaintiff, apart from the uninvestigated complaint itself." *Seoane-Vazquez v. Ohio State Univ.*, 577 F. App'x 418, 433 (6th Cir. 2014) (internal quotation marks omitted). Plaintiff's declaration constitutes evidence that Mr. Emerson was aware of Plaintiff's complaint but failed to investigate or intervene; but Plaintiff must also show that there is a "separate, protected act by the plaintiff" other than lodging the complaint itself. *Id.* Plaintiff has not done so here, and instead asserts a failure to investigate the same complaint Plaintiff made to Mr. Emerson. Because his un-investigated complaint is the same complaint that

Plaintiff asserts Defendant refused to investigate as an act of retaliation, Plaintiff cannot maintain a retaliation claim based on a failure to investigate as a matter of law. *Livingston v. Calvillo*, 2020 WL 13695814, at *15 (N.D. Ohio July 15, 2020).

Construing the evidence in a light most favorable to Plaintiff, the Court finds that Plaintiff has not demonstrated that he suffered any materially adverse action following his complaint to Mr. Emerson. Therefore, Plaintiff's retaliation claim fails. *See Hill v. Bd. of Educ. of City Sch. Dist. of Cincinnati*, 2015 WL 3868004, at *11 (S.D. Ohio June 23, 2015) (retaliation claim fails because plaintiff did not show she suffered an adverse action); *Erwin v. Honda N. Am., Inc.*, 2023 WL 3035355, at *4 (6th Cir. Apr. 21, 2023) (affirming dismissal of retaliation claim where plaintiff failed to show she was constructively discharged). Since Plaintiff has not established the second element of a claim for retaliation, the Court need not address the third element of a retaliation claim, i.e., whether any alleged termination was causally connected to Plaintiff's alleged complaints to Mr. Emerson. Accordingly, the Defendant's Motion for Summary Judgment is **GRANTED** as to Plaintiff's claim for retaliation under Title VII (Count II).

IV.     Conclusion

For all the above reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment. (Doc. No. 20.)

**IT IS SO ORDERED.**

Date:  November 17, 2023

*s/Pamela A. Barker*
PAMELA A. BARKER
U. S. DISTRICT JUDGE